## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

UNITED STATES OF AMERICA and THE
STATE OF FLORIDA ex rel. CHRISTINA
PAUL

    Plaintiffs/ Relator,

v.                                                 Case No: 8:18-cv-396-T-36JSS

BIOTRONIK, INC.,

    Defendant.

_____/

## ORDER

This cause comes before the Court upon Defendant Biotronik, Inc.'s Motion to Dismiss (Doc. 26), Plaintiff's response in opposition (Doc. 29), and Defendant's reply to response (Doc. 37). For the reasons that follow, the Court will grant the Motion.

### I.  FACTS[1]

Relator, Christina Paul, worked as a Field Clinical Specialist with Defendant Biotronik, Inc, a medical device company, from April 7, 2014, at least up to the time she filed this action. (Doc. 1 ¶¶ 4, 5). In that capacity, Relater provided technical and clinical support to sales representatives within a defined geographic boundary and also provided education, follow-up services, implant services, in service training, and other services necessary to the sales force, physicians, and other cardiac pacing-related professionals. *See id.* at ¶ 4. Relator alleges that

---

[1] The following statement of facts is derived from the Relator's Complaint (Doc. 1), the allegations of which the Court must accept as true in ruling on the instant Motion to Dismiss. *Linder v. Portocarrero,* 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.,* 711 F.2d 989, 994 (11th Cir. 1983)

Defendant engaged in a kickback scheme designed to defraud the government in violation of the Federal False Claims Act, 31 U.S.C. §§ 3729, et seq. and Florida False Claims Act, §§ 68.081 et seq., Fla. Stat. *See id.* at ¶¶ 1, 2, 3.

In her complaint, Relator alleges that Defendant was engaging in a fraudulent scheme to generate consumer demand for its medical devices and services by paying incentives to medical professionals who used its products and services. *See id.* at ¶ 17. Relator asserts that Defendant's employee Paul McLoughlin made payments—in kind—to various medical professionals in order to induce them to use Defendant's products. *See id.* at ¶ 18. More specifically, Mr. McLoughlin made inducement payments to at least four cardiologists, including:

    a. Paying for Dr. Ketul Chauhan, a cardiologist, and his family to go on a cruise in exchange for using Defendant's products and services.

    b. Paying for Dr. Chauhan and his girlfriend to go on vacation in exchange for using Defendant's products and services.

    c. Paying for Dr. Chauhan's events he attends in exchange for using Defendant's products and services.

    d. Paying for a cell phone for Dr. Aung Tun's, a cardiologist, girlfriend in exchange for using Defendant's products and services.

    e. Taking Dr. Tun on an annual vacation to Burma and removing ten thousand dollars of company money to treat Dr. Tun while they were there in exchange for using Defendant's products and services. Additionally, Mr. Mcloughlin has the company "donate" devices that are shipped to Burma for Dr. Tun to implant. Mr. Mcloughlin does not take vacation time for these annual trips.

    f. Paying illicit "donations" to Dr. Ramanath Rao, a cardiologist, in exchange for using Defendant's products and services.

  g. Taking Dr. Phillip Owen, a cardiologist, on a ski trip in exchange for using Defendant's products and services.

*See id.* Relator indicates that these specific examples are just a few of what she witnessed during her time with Defendant and that many of the devices and procedures used by these named doctors are reimbursed by federal healthcare programs including Medicare and Medicaid. *See id.* at ¶ 19. Additionally, Relator contends that she reported Mr. McLoughlin's action to Defendant but no action was taken in response. *See id.* at ¶¶ 21, 22.

  The complaint alleges three violations of the Federal False Claims Act and three identical violations of the Florida False Claims Act. Count I alleges that "Defendant knowingly presented or caused to be presented, false or fraudulent claims to officers, employees or agents of the United States government for payment or approval" in violation of 31 U.S.C. § 3729(a)(1)(A). *See id.* at ¶ 25. Count II alleges a violation of 31 U.S.C. § 3729(a)(1 )(B) because "Defendant knowingly made, used, or caused to be made or used false or fraudulent records and statements, and omitted material facts, to get false or fraudulent claims paid or approved by the United States government." *See id.* at ¶ 30. In Count III, Relator alleges that "Defendant knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government" which violates 31 U.S.C. § 3729(a)(1)(G). *See id.* at ¶ 35. Counts IV, V, and VI allege violations of the equivalent sections in the Florida False Claim Act. *See id.* at ¶¶ 41, 47, 53.

  Defendant filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). (Doc. 26). Defendant argues that the Complaint lacks the sufficient particularity required for pleading fraud as required by Rule 9(b) and otherwise fails to state claims under both the Federal False Claims Act and Florida False Claims Act. *See id.* Relator filed a response in which

3

she argues, among other things, that she has sufficiently pleaded fraud by providing details as to "the names of the doctors who received the incentives, the names of the defendants' employees who negotiated the incentives with the doctors, precisely what the incentives were, when they were provided, why they were provided, and why they were illegal." (Doc. 29). In addition, Relator argues that both the federal and Florida claims sufficiently allege causes of action.

## II.  LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*

In addition to satisfying the general pleading requirements articulated in *Twombly* and *Iqbal*, certain claims must satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b), which places more stringent requirements on cases alleging fraud. *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301 (11th Cir. 2002). "[U]nder Rule 9(b) allegations of fraud must include facts as to time, place, and substance of the defendant's alleged fraud." *Id.* at 1308 (citation and internal quotations omitted). The Rule 9(b) particularity requirement for fraud allegations

4

exists to put defendants on notice as to the exact misconduct with which they are charged and to protect defendants against spurious charges. *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001); *Thornton v. Nat'l Compounding Co., Inc.*, No. 8:15-CV-2647-T-36JSS, 2019 WL 2744623, at *9 (M.D. Fla. July 1, 2019) (stating same). The failure to satisfy Rule 9(b)'s pleading requirements amounts to a failure to state a claim under Rule 12(b)(6) and requires dismissal of the complaint. *See, e.g., Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005).

### III.   ANALYSIS

In this case, Relator alleges federal and Florida False Claims Act violations arising from an alleged unlawful kickback scheme between Defendant and various medical practitioners. "The FCA was enacted to recover money fraudulently taken from the government" and "allows a private party to bring a civil action (known as *qui tam*) alleging fraud upon the government." *Thornton*, 2019 WL 2744623, at *9. Because the False Claims Act is 'a fraud statute', the heightened pleading standard of Rule 9(b) applies to Relator's complaint. *See Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1324 (11th Cir. 2009) (*citing Clausen,* 290 F.3d at 1309–10). This standard applies to both the allegations regarding the underlying violation of the Anti–Kickback Statute and the violation of the False Claims Act. *United States v. Choudhry*, 262 F. Supp. 3d 1299, 1308 (M.D. Fla. 2017).

### **Anti–Kickback Statute**

The Anti–Kickback Statute is violated when a defendant: (1) knowingly and willfully, (2) "offers or pays any remuneration," directly or indirectly, (3) to induce a person to refer individuals to the defendants for the furnishing of medical services, (4) paid for by a federal healthcare program. *U.S. ex rel. Mastej v. Health Mgmt. Assocs., Inc.*, 591 F. App'x 693, 698 (11th Cir. 2014)

5

(discussing 42 U.S.C. § 1320a–7b(b)); *United States v. Kindred Healthcare*, No. 8:16-CV-2076-T-27CPT, 2019 WL 4345782, at *2 (M.D. Fla. Sept. 12, 2019) (stating same). Failure to sufficiently plead the elements warrants dismissal. *U.S. ex rel. Bane v. Breathe Easy Pulmonary Servs., Inc.*, No. 806-CV-40-T-24MAP, 2008 WL 343158, at *1 (M.D. Fla. Feb. 5, 2008), provides an example. There, Plaintiff alleged that Defendants Breathe Easy Pulmonary Services, Inc. and Premier Cardio Pulmonary Medical, Inc. violated the Anti-Kickback Act when Lincare referred patients to Defendants for oximetry testing and obtained referral forms from the patients' physicians that allowed the oximetry testing, along with other unintentionally authorized tests, to be performed. *Id.* The court found that Plaintiff had failed to allege that Lincare solicited or received, or that Defendants offered or provided, remuneration for the referrals, and dismissed the claim. *Id. But see United States ex rel. McFarland v. Fla. Pharmacy Sols.*, No. 8:15-CV-1708-T-23TGW, 2017 WL 10294800, at *2 (M.D. Fla. Nov. 28, 2017) (finding that the complaint alleged in detail sufficient to satisfy Rule 9(b) that the marketing defendants Kotchey, Mediverse, and Wilkerson received $12.3 million in exchange for "arranging" or "recommending" the Tricare beneficiaries' ordering from defendant Florida Pharmacy Solutions of pain cream, scar cream, and wellness capsules such that a violation of the Anti-Kickback Act had been sufficiently pleaded). Upon finding that the underlying violation of the Anti–Kickback Act has been sufficiently pleaded, a court must then consider whether the violation of the False Claims Act has also been sufficiently alleged. *See Choudhry*, 262 F. Supp. 3d at 1308.

Relator's complaint fails at this threshold juncture. The complaint does not plead with sufficient particularity that Defendant was engaged in a kickback scheme. Most deficient are the allegations that medical services or products were being paid for by a federal healthcare program. Defendant alleges in pertinent part that "[m]any of the devices and procedures used by the above-

listed medical providers are reimbursed by federal healthcare programs, including Medicare and Medicaid." (Doc. 1 ¶ 19). Additionally, Defendant also alleges that "Mr. Mcloughlin also set up 'dummy' home monitoring sites which allowed him to check on several doctor's patients remotely and receive income from HM shipments to these patients. These shipments are likely reimbursed by federal healthcare programs, including Medicare and Medicaid." *See id.* at ¶ 20. These are conclusory statements. Not only has Relator failed to identify any device or service provided to patients by the cardiologists identified, the complaint also lacks any information as to which federal healthcare paid for the particular device or service. This renders the complaint too vague to plead fraud. Moreover, the complaint is devoid of any facts regarding when or how the kickbacks were provided to these cardiologists. *See Choudhry*, 262 F. Supp. 3d at 1307. Accordingly, the complaint does not sufficiently plead a kickback scheme involving Defendant and the various medical providers, which along with the remaining deficiencies discussed below, warrant dismissal of the complaint.

**Presentment of False Claims**

As to the violation of 31 U.S.C. § 3729(a)(1)(A), and the corresponding state law claim, "the central question is whether defendants presented or caused to be presented a false claim." *Choudhry*, 262 F. Supp. 3d at 1308; *United States ex rel. Silva v. VICI Mktg., LLC*, 361 F. Supp. 3d 1245, 1252 (M.D. Fla. 2019) (stating same). "[T]he submission of an actual claim to the government for payment is 'the *sine qua non*' of an FCA violation." *Mastej*, 591 F. App'x at 703 (quoting *Clausen,* 290 F.3d at 1311). In addressing this requirement, the *Choudhry* court has explained:

> To satisfy the presentment requirement, a relator "must allege the actual presentment of a claim ... with particularity, meaning particular facts about the 'who,' 'what,' 'where,' 'when,' and 'how'

> of fraudulent submissions to the government." *Urquilla–Diaz,* 780 F.3d at 1052 (internal quotation marks omitted). "Providing exact billing data—name, date, amount, and services rendered—or attaching a representative sample claim is one way a complaint can establish the necessary indicia of reliability that a false claim was actually submitted." *Mastej*, 591 Fed.Appx. at 704. Alternatively, "a relator with direct, first-hand knowledge of the defendants' submission of false claims gained through her employment with the defendants may have a sufficient basis for asserting that the defendants actually submitted false claims," *Id.* But "[i]t is not enough for the plaintiff-relator to state baldly that he was aware of the defendants' billing practices, to base his knowledge on rumors, or to offer only conjecture about the source of his knowledge." *Id.* at 704–705 (internal citations omitted).

262 F. Supp. 3d at 1308–09; *see also United States ex rel. Silva v. VICI Mktg., LLC*, 361 F. Supp. 3d 1245, 1253 (M.D. Fla. 2019) (finding that the Complaint in partial intervention alleged with particularity how defendant Larry Smith caused false claims to be submitted to Tricare, a governmental healthcare program); *United States ex rel. Herbold v. Doctor's Choice Home Care, Inc.*, No. 8:15-CV-1044-T-33AEP, 2019 WL 5653459, at *12 (M.D. Fla. Oct. 31, 2019) (finding that the complaint sufficiently alleged the submission of claims that were false).

Failure to sufficiently plead that a claim was submitted justifies dismissal of a claim alleging a violation of § 3729(a)(1)(A). In *Corsello*, the Eleventh Circuit Court of Appeals held that the second amended complaint failed to provide a factual basis to conclude that fraudulent claims were ever actually submitted to the government in violation of the False Claims Act. 428 F.3d 1008 at 1013. Relator Corsello worked in sales and his allegations were often based on "information and belief" which the court found lacking the indicia of reliability required by *Clausen*. *Id.* The court reasoned:

> Underlying improper practices alone are insufficient to state a claim under the False Claims Act absent allegations that a specific fraudulent claim was in fact submitted to the

8

> government. *Clausen,* 290 F.3d at 1311. In short, Corsello provided the "who," "what," "where," "when," and "how" of improper practices, but he failed to allege the "who," "what," "where," "when," and "how" of fraudulent submissions to the government.

*Id.* at 1015.

The fourth amended complaint in *United States v. LifePath Hospice, Inc.*, No. 8:10-CV-1061-T-30TGW, 2016 WL 5239863, at *7 (M.D. Fla. Sept. 22, 2016), *aff'd sub nom. United States v. HPC Healthcare, Inc.*, 723 F. App'x 783 (11th Cir. 2018), suffered the same fate. In that case, the court dismissed the complaint on the ground that Relator Nancy Chase, a social worker employed by LifePath, provided only conclusory allegations that false claims were submitted to the government. *Id.* at 8. The court explained in detail:

> Chase falls well short of meeting the requirements of Rule 9 and the standard described in *Clausen*. Chase does not identify a single claim submitted to the government, let alone a false one. She does not identify anyone who submitted the alleged false claims she cannot specifically identify. She does not specify when any false claims were submitted. What Chase has done is describe a private scheme in detail, to include facts as to some disturbing medical practices. She has not alleged " 'facts as to time, place, and substance of the defendant's alleged fraud' "—that is, a fraudulent claim. *Clausen*, 290 F.3d at 1310 (quoting *Cooper*, 19 F.3d at 567–68); *see Matheny*, 671 F.3d at 1225. As it was in *Clausen*, this failure is fatal to Chase's claim.

*Id.* at 7. Thus, it is not enough that the complaint present conclusory allegations without factual support or some indicia of reliability. There must be enough to apprise defendant as to the exact conduct that is at issue.

Like the complaints in *Corsello* and *LifePath Hospice*, the complaint here does not provide "particular facts about the 'who,' 'what,' 'where,' 'when,' and 'how' of fraudulent submissions to the government." *Choudhry*, 262 F. Supp. 3d at 1308–09. In fact, the entire complaint is devoid of an allegation of a claim being submitted to a federal healthcare program for payment. (Doc. 1 ¶¶

9

17 – 28). Again, presentment is "'the *sine qua non*' of an FCA violation." *Mastej*, 591 F. App'x at 703. Rather, Relator merely alleges that reimbursements for many of the devices and procedures used by the cardiologists identified come from federal healthcare programs and further surmises that shipments relating to home monitoring are likely reimbursed by those programs. *See id.* at ¶¶ 19, 20. This is not enough to meet the heightened standard for pleading fraud. Moreover, while Relator identifies herself as "the original source of the facts and information alleged in th[e] Complaint," *see id.* at ¶ 6, her allegations do not provide the indicia of reliability that actual claims were submitted for payment. *See Corsello*, 428 F.3d at 1013; *United States v. Premier Hospitalists PL*, No. 8:14-CV-2952-T-33TBM, 2017 WL 119773, at *5 (M.D. Fla. Jan. 12, 2017) (finding that the Second Amended Complaint contained sufficient indicia of reliability to meet the pleading requirements of Rule 9(b), on the basis that "[a]lthough none of the Plaintiffs personally submitted fraudulent bills, they allege that they gained firsthand knowledge of the fraudulent billing practices at Premier through their work", and they provided detailed description of the allegedly fraudulent schemes, and insider knowledge of and access to billing logs and summaries). As Plaintiff has failed to sufficiently plead presentment, the gist of a § 3729(a)(1)(A) claim, Count I fails to satisfy Rule 9(b).

**False Statements**

To the contrary, 31 U.S.C. § 3729(a)(1)(B) does not demand proof that the defendant presented or caused to be presented a false claim to the government or that the defendant's false record or statement itself was ever submitted to the government. *Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1327 (11th Cir. 2009). Under that section, "a plaintiff must show that (1) the defendant made a false record or statement for the purpose of getting a false claim paid or approved by the government; and (2) the defendant's false record or statement caused the government to

actually pay a false claim, either to the defendant itself, or to a third party." *Id.*; *United States ex rel Patel v. GE Healthcare, Inc.*, No. 8:14-CV-120-T-33TGW, 2017 WL 4310263, at *8 (M.D. Fla. Sept. 28, 2017) (stating same). In *Choudhry*, for instance, the court dismissed—with leave to amend—the count which alleged a violation of this section because the relator failed to identify what "false record or statement" was made or used. 262 F. Supp. 3d at 1311. See also *United States ex rel. Sharpe v. Americare Ambulance*, No. 8:13-CV-1171-T-33AEP, 2017 WL 2840574, at *7 (M.D. Fla. July 3, 2017) ("The Complaint fails to identify what 'false record or statement' is at issue and why the statement was 'material' to a false claim. Count II is therefore dismissed with leave to amend.").

Similarly, the *Mastej* court granted a dismissal of this claim where it found that Relator had insufficiently pleaded both of its requirements. 869 F. Supp. 2d at 1345. In its reasoning, the court found that the first requirement was insufficiently pleaded because Relator's allegations that the defendants acted with the purpose of getting a false claim paid were conclusory and the complaint failed to link the purposes of defendants' schemes with the intent of submitting false statements to the government with the intention that the government would rely on those statements as a condition to payment. *Id.* at 1345-1346. On the second requirement, the court reasoned that Relator merely alleged that the Government paid on these claims, without providing the dates, amounts, or any other identifying detail of any of these alleged payments, and thus lacked the requisite specificity. *Id.* at 1346.

In another case, *United States v. Cross Garden Care Ctr., LLC*, No. 8:16-CV-961-T-27AEP, 2019 WL 6493972, at *6 (M.D. Fla. Dec. 3, 2019), bareboned allegations of false narratives in patient notes was held insufficient to plead a violation of § 3729(a)(1)(B). The complaint in that case alleged that "CGC, at the direction of Karl Cross, with services being

performed, at least in part, by [Tabatha] Cross, knowingly made or caused to be made a false record or statement to a false claim when they created false narratives in patient notes to justify their decision to provide services in excess of what is medically necessary." *Id.* No allegation about the content of the false narratives or whether they were included with any submitted claims was presented. *Id.* In dismissing this claim, the court reasoned that it was impossible to determine from the complaint whether the statements were material, when the false narratives were provided, or for which services or patients. *Id.*

Here, Relator has not identified any statement or record made by Defendant. Indeed, the only allegations concerning Defendant relate to the alleged kickback scheme involving the trips and gifts to four cardiologists. (Doc. 1 ¶¶ 17 – 22, 29 – 33). There are no allegations addressing false claims. This is fatal to a claim alleging a violation of 31 U.S.C. § 3729(a)(1)(B). As the court in *Cross Garden Care Ctr.* and many other cases from this circuit have reasoned, the absence of this false record makes it impossible to determine whether the false statement was material to a false claim. In light of this, Relator has not satisfied the dictates of Rule 9(b) in pleading Count II.

### **Reverse False Claim**

Lastly, "to establish a reverse false claim cause of action" pursuant to 31 U.S.C. § 3729(a)(1)(G), "a relator must show that the defendant owed a definite and clear 'obligation to pay money to the United States at the time of the allegedly false statements.' " *United States v. Lee Mem'l Health Sys.*, No. 2:14-CV-437-FTM-38CM, 2019 WL 1061113, at *7 (M.D. Fla. Mar. 6, 2019) (*quoting Space Coast Med. Assocs., LLP*, 94 F. Supp. 3d at 1263). Liability under this section results from avoiding the payment of money due to the government, as opposed to submitting to the government a false claim. *United States ex rel. Stepe v. RS Compounding LLC*, 304 F. Supp. 3d 1216, 1226 (M.D. Fla. 2018); *Mastej*, 869 F. Supp. 2d at 1346 ("In

a Section 3729(a)(1)(G) action, 'the defendant's action does not result in improper payment by the government to the defendant, but instead results in no payment to the government when a payment is obligated.' ").

In *Lee Mem'l Health Sys.,* the court dismissed this claim on the basis that the Amended Complaint could not establish that Lee Health had an obligation to repay the Government. 2019 WL 1061113, at *7. The court reasoned that Lee Health only had an obligation to repay the Government if Lee Health submitted and received payment for false claims and the relator failed to demonstrate that Lee Health submitted and received payment for false claims. *Id.* Accordingly, the complaint in that case did not allege facts from which the court could conclude that the defendant was avoiding a payment obligation to the government. *See also United States ex rel. Childress v. Ocala Heart Inst., Inc.*, No. 5:13-CV-470-OC-22PRL, 2015 WL 13793109, at *6 (M.D. Fla. July 2, 2015) ("Relator simply makes legal conclusions that defendants violated § 31 U.S.C. § 3729(a)(1)(G), but provides no specific allegations to support his claim."); *United States v. Space Coast Med. Assocs., L.L.P.*, 94 F. Supp. 3d 1250, 1264 (M.D. Fla. 2015) (finding that § 3729(a)(1)(G) claims failed because the complaint did not plead either a false statement or knowledge on the part of Defendants).

A different outcome was presented in *United States Stepe v. RS Compounding LLC*, 325 F.R.D. 699, 709 (M.D. Fla. 2017) where the court found that a reverse false claim was sufficiently alleged. In that case, the complaint alleged that "the 'concrete' obligation to repay under § 3729(b)(3) and § 3729(a)(1)(G) was triggered when the defendants knew they had received funds to which they were not entitled and retained the funds instead of returning them." *Id.* The court stated that "[t]hese allegations sufficiently set forth an 'obligation' within the meaning of § 3729(b)(3), specifically 'an established duty ... arising from ... the retention of any overpayment,'

so as to state a cause of action for a reverse false claim under the post-FERA version of the [FCA]." *Id.* Notably, the court also found that the complaint sufficiently alleged presentation of a false claim and use of false records or statements. *Id.* at 705-708.

As discussed above, Relator has not sufficiently alleged that Defendant either submitted a false claim for payment by a federal healthcare program or made a false statement or record in furtherance of such. Relator has not otherwise pleaded that Defendant has any payment obligation to the government or has made any false statement in order to avoid that obligation. (Doc. 1 ¶¶ 17 – 22, 34 – 38). As a result, Relator does not sufficiently plead a violation of 31 U.S.C. § 3729(a)(1)(G) in Count III.

**Florida claims**

The claims for violation of Florida's False Claim Act alleged in Counts IV, V, and VI model the federal claims addressed above, require proof of the same elements and the same heightened standard for pleading fraud. *United States v. Sand Lake Cancer Ctr., P.A.*, No. 8:13-CV-2724-T-27MAP, 2019 WL 423156, at *2 (M.D. Fla. Feb. 4, 2019) ("Relator's claims brought under Florida law require proof of the same elements."); *LifePath Hospice, Inc.*, 2016 WL 5239863, at *8 (reasoning that because the statutes govern the same conduct, impose the same liability, grant relators the same stake in any potential recovery, and use nearly identical language in setting forth the elements of a violation, "the standards under both the Florida Act and the Federal Act are the same.") (*citing United States ex. rel. Heater v. Holy Cross Hosp., Inc.*, 510 F. Supp. 2d 1027, 1036 (S.D. Fla. 2007)); *Carrel v. AIDS Healthcare Found., Inc.*, 898 F.3d 1267, 1272 (11th Cir. 2018) (noting that "Florida has enacted a parallel statutory scheme with similar provisions" to the False Claims Act, 31 U.S.C. § 3729 *et seq.*). For instance, the court in *United States v. Norman*, No. 8:15-CV-1506-T-23AEP, 2018 WL 264253, at *3 (M.D. Fla. Jan. 2, 2018)

14

granted the defendant's motion to dismiss, noting in its opinion that |[b]ecause the complaint fail[ed] to identify with particularity a false claim submitted to, or paid by, the State of Florida, the relator failed] to state a claim under the Florida False Claims Act." Likewise, in *United States v. Univ. of Miami*, No. 12-24513-CIV, 2018 WL 8581772, at *7 (S.D. Fla. Mar. 29, 2018), the court concluded because the Second Amended Complaint adequately alleges claims under the federal False Claims Act, Count VIII adequately states a claim under the Florida False Claims Act. Having found that Relator has not sufficiently pleaded claims under the federal False Claims Act, and that the identical Florida False Claims violations are based on the same allegations as the federal claims, the Court finds that Counts IV, V, and VI also fail to satisfy Rule 9(b).

IV. **CONCLUSION**

The complaint against Defendant for False Claim Act violations arising from a kickback scheme between Defendant and various medical providers does not provide the necessary particularity or detail required for claims of fraud. Instead, the complaint is rife with conclusory allegations and missing details. Additionally, enough detail is not provided in the complaint to allow the Court to find that Relator's knowledge of the alleged scheme—gained from her work with Defendant—provides an indicium of reliability. For these reasons, as expressed more fully above, the Court will dismiss Relator's complaint, with leave to amend.

Accordingly, it is hereby **ORDERED:**

1. Defendant's Motion to Dismiss (Doc. 26), is **GRANTED**. Relator is granted leave to file an amended complaint on or before **May 4, 2020**, which cures the deficiencies discussed in this Order. Failure to file an amended complaint within the time provided will result in dismissal of this action without further notice.

**DONE AND ORDERED** in Tampa, Florida on April 20, 2020.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:

Counsel of Record and Unrepresented Parties, if any